UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**KIMBERLY DICKINSON,**

    **Plaintiff,**

    v.                                   **Civil Action 2:20-cv-1004**
                                          **Judge James L. Graham**
**COMMISSIONER OF SOCIAL**           **Magistrate Judge Chelsey M. Vascura**
**SECURITY,**

    **Defendants.**

## **REPORT AND RECOMMENDATION**

Plaintiff, Kimberly Dickinson, ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Period of Disability and Disability Insurance benefits.  This matter is before the Court on Plaintiff's Statement of Errors (ECF No. 14), the Commissioner's Memorandum in Opposition (ECF No. 15), Plaintiff's Reply (ECF No. 16), and the administrative record (ECF No. 10).  For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

        **I.**        **BACKGROUND**

Plaintiff filed her application for Title II benefits on June 28, 2016, alleging that she had been disabled since December 31, 2014.  (R. 164–72.)  On August 9, 2018, following administrative denials of Plaintiff's application initially and on reconsideration, Administrative Law Judge Timothy G. Keller (the "ALJ") held a hearing.  (*Id.* at 32–44.)  The ALJ continued that hearing because he needed to examine new records.  (*Id.* at 44.)  The ALJ held a second

hearing on December 20, 2018. (*Id.* at 590–634.) Plaintiff, represented by counsel, appeared and testified. (*Id.*) Vocational expert John Finch also appeared and testified at the hearing. (*Id.*) On February 6, 2019, the ALJ issued a decision denying benefits. (*Id.* at 12–31.) On December 20, 2019, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. 1–6.) Plaintiff then timely commenced the instant action. (ECF No. 1.)

In her Statement of Errors (ECF No. 14), Plaintiff's sole contention of error is that the ALJ violated her due process rights because the ALJ "[stood] in the way of an open inquiry" of the VE. (Pl.'s Statement of Errors 8, ECF No. 14.)

## II. THE ALJ'S DECISION

On February 6, 2019, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. 12–31.) At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantial gainful activity

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

2

since her alleged onset date of December 31, 2014. (*Id.* at 17.) At step two, the ALJ found that Plaintiff had the severe impairments of cervical degenerative disc disease status-post remote ACDF; lumbar degenerative disc disease; asthma; right carpal/cubital tunnel syndrome status-post release; obesity; mild degenerative arthritis of the right knee; and as of August 2, 2017, left ankle instability status-post repair. (*Id.* at 17–18.) He further found at step three that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 18–19.) At step four of the sequential process, the ALJ set forth Plaintiff's RFC as follows:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that the claimant can occasionally climb ramps or stairs but never climb ladders, ropes, or scaffolds. She can frequently crouch and occasionally crawl. She can never lift overhead. She can frequently finger with the right hand. She can have occasional exposure to moving machinery, unprotected heights. She can have occasional exposure to dust, fumes, and gases. In addition, as of August 2, 2017, the claimant's ability to stand and/or walk [is limited] to two hours in an eight-hour day.

(*Id.* at 19.) At step five of the sequential process, the ALJ, relying on the VE's testimony, found that Plaintiff was capable of performing past relevant work as a receptionist and secretary. (*Id.* at 25.) The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act. (*Id.* at 25–26.)

### III.     RELEVANT EVIDENCE OF RECORD

Plaintiff's sole contention of errors arises from the exchange between her hearing attorney, Mr. Morgan, the ALJ, and the VE at the December 2018 hearing. (Pl.'s Statement of Errors 2–9, ECF No. 14.) The pertinent part of Mr. Morgan's examination of the VE is as follows:

> ATTY And then my last series of questions, Judge, focuses on Exhibit 6-F, which is Social Security's Dr. Grodner's evaluation in December 2016.

ALJ   Well, I don't know—you can just give me the limitations instead of making this argument that this is what is reflected by Dr. Grodner.  I mean, I understand what you're talking about.  But if I don't bring something up, I'm not necessarily agreeing that any restrictions that you give are accurately reflected in the report of Dr. Grodner.  And we don't—

ATTY Oh, but I haven't asked my question yet, sir.

ALJ   We don't have to go there, but you've already done it, you see.  You say this is what—this is based on Dr. Grodner.  And there's going to—I expect there will be some disagreement on—

ATTY I don't think so.

ALJ   —on—

ATTY Yeah. I don't think so.

ALJ   —what restrictions—well, we don't need to go there.  If you can just give the restrictions, you can make an argument later that—

ATTY Okay

ALJ   —this is what's reflected by Dr. Grodner, but not in—but not argument right in the middle of a question to a VE is not really appropriate.  You're welcome to make it later after Dr. Finch responds to what restrictions you think are appropriate—

ATTY I agree.

ALJ   —of course.  Okay.

ATTY And in my questions, I'm going to say it the way Dr. Grodner reported it with no license on my part.

ALJ   We're back to the same problem, but that's okay.

ATTY Well, he identifies limitations.  And I would like to ask the vocational expert if there's—

ALJ   You can ask him whatever kind—you know, you can ask Dr. Finch appropriate questions about limitations.  But the argument that this is what Dr. Grodner is saying should not be a part of the question that you give Dr. Finch.  You're welcome to make that argument with me, but argument isn't to be used—just give Dr. Finch restrictions.

ATTY I was.

4

ALJ   Okay. Well, we're missing the whole point then, but go ahead. But it's not Dr. Grodner says that this is what it is. I need you to give restrictions that you think are appropriate.

ATTY Dr. Finch, please consider someone of Ms. Dickinson's age, education, and work history with the following limitations. The hypothetical person could participate in sedentary and light activities on an intermittent basis.

ALJ   Yeah. Okay. So what is the work restriction?

ATTY May I continue?

ALJ   Well, I got a problem already, so we had better get over that. I don't know what—

ATTY Well, you interrupted me in the middle of what intermittent means, so I would like to be able to interpret what intermittent is according to the Stedman Medical Dictionary and, also, according to the Merriam-Webster Dictionary.

ALJ   So, what is the work restriction? I think you were—once again, we're going to argument within a VE question. And I would rather just get straight to what the work restriction is and make the argument that this is what a doctor is actually saying later, separate from what we give to Dr. Finch.

ATTY I'm saying exactly what the doctor said.

ALJ   That's what I don't want. I want you to tell us what the work restriction is and make the argument that this is what the doctor is saying it is separately.

ATTY If a doctor identifies work restrictions—

ALJ   Doctors—

ATTY —and I put—

ALJ   The doctor—okay. I'm sorry, I don't want to keep interrupting. I understand what you're—

ATTY Well, you are—

ALJ   But—

ATT   —interrupting—

ALJ   I don't want to do—

ATTY —and I would like to get through this and move on and save everyone anymore wasted time.

5

ALJ     Okay.  We're not wasting time because we're going to do it my way.

ATTY    May I continue?

ALJ     Sure.

ATTY    So, the first limitation I just gave you is this hypothetical person of my client's age, education, work history is limited to sedentary or light activity on an intermittent basis.

ALJ     That's not a work restriction.

ATTY    And intermittent—may I continue?

ALJ     That's not a work restriction.  I need work restrictions.

ATTY    But I'm going to give him that.

ALJ     No.  I want to go to what the work restriction is, not the dance that you want to do beforehand.  I want the work restriction.

ATTY    Are you saying I cannot ask my question?

ALJ     That's it.  I'm sorry we had to go there, but that's it Mr. Morgan.  That's exactly it.  But I welcome you to give Dr. Finch some appropriate work restrictions that you think are appropriate.

ATTY    May I—

ALJ     But that's not—

ATTY    May I continue?  Just let me ask the question.  And then when I'm done, you can decide whether or not it's appropriate in you—

ALJ     It's not appropriate.  Let's get to the work restriction, Mr. Morgan, so we don't have to go back and forth anymore.  And that is not inappropriate—

ATTY    I don't understand why you're getting so upset, I really—

ALJ     I'm not—

ATTY    —don't.

ALJ     —upset.  That's not an appropriate work restriction to say intermittent sedentary work.  That's not a work restriction that I think is appropriate to give Dr. Finch.  But you—I'm sure that you can come up with an appropriate work restriction.

6

ATTY May I continue? I just want to continue, Judge, and get through the next limitation.

ALJ We haven't gotten to the first limitation is my point, Mr. Morgan. So let's—

ATTY May I—

ALJ Let's go to the work—

ATTY —interpret—

ALJ —restriction.

ATTY —what intermittent means?

ALJ: No. Just give—yes. You can give a work restriction. But you're not—it's not an interpretation of what Dr. Grodner is saying. It's what the—we need a work restriction to give to Dr. Finch.

ATTY May I interpret—all I need is a yes or no without an argument.

ALJ Just leave Dr. Grodner and his report out of this and give—

ATTY Why? Because he identifies—let's say—

ALJ No. We're not going to do that, Mr. Morgan. If we can't get past it, then let's just get past this whole questioning—

ATTY Done.

ALJ —because we're not going to talk about what Dr Grodner's report says. You can do it later, but not when you're giving questions to Dr. Finch.

ATTY All I'm doing—Judge, let me say this. Give me an opportunity to make this statement before I'm interrupted.

ALJ No.

ATTY Please.

ALJ No. Leave Dr. Grodner's report out.

ATTY Okay.

ALJ Leave it out.

ATTY I don't want to.

ALJ Please just leave it out. You don't—

7

ATTY He was—

ALJ —want to?

ATTY He was—

ALJ But you—but we're going to or we're not going to give the questions to Dr. Finch. Please give—

ATTY All right.

ALJ —questions to Dr. Finch that you believe are work restrictions without the buildup about these—this is what's reflected by Dr. Grodner and this is what it means.

ATTY I'm using his words

ALJ No. We're not going to use his words. I want your words about work restrictions.

ATTY Well, I'm not a doctor.

ALJ Well, we're not going to do it then, Mr. Morgan. I'm sorry we had to get here, but you can look around in amazement as much as you want. But I'm waiting for you to give appropriate work restrictions to Dr. Finch.

ATTY May I give—

ALJ And you're not—apparently don't plan on doing so.

ATTY I plan on doing so. I want—

ALJ Let's go—

ATTY —to ask—

ALJ —straight there, then.

ATTY Thank you.

ALJ Let's go straight to the work restriction without you pointing to what Dr. Grodner says.

ATTY Please consider someone of my client's age, education, work history with the following limitations. Any type of repetitive activity such as turning her head or range of motion of the cervical spine would be difficult.

ALJ What is the work restriction?

8

ATTY And let's define difficult as occasional.

ALJ So—

ATTY She's—

ALJ —the work restriction is occasional turning the head?

ATTY Yes, sir.

ALJ She can only occasional turn her head.

ATTY Well, he says difficult.

ALJ I don't care—the problem is not what he says. It's the problem that what work restrictions you're giving to Dr. Finch. Can we just get to actual work restrictions—

ATTY I defined it.

ALJ —without—

ATTY I defined it—

ALJ —without reading it—

ATTY —as occasional.

ALJ Okay. So, the work restriction is a person is only occasional, up to one third of the day, able to turn their head from looking straight ahead?

ATTY Or range of motion is limited. He says difficult. I'm asking the vocational expert to interpret that as—

ALJ No.

ATTY —occasional.

ALJ Okay. What is the work restriction, then, occasional—only one third of the day, the person is able to turn their head from straight forward.

ATTY It says turning her head or range—

ALJ I don't care—

ATTY —of motion.

ALJ —what it says. I'm trying to—if you would, please quit referring to what Dr. Grodner says and focus on the work restriction. This is not—you can argue

9

later about what the appropriate interpretation of Grodner's report is. But I need actual work restrictions that you think are appropriate.

ATTY I have no further questions

ALJ Thank you. Why don't you try to give some work restrictions—

ATTY You're not allowing me to using Dr. Grodner's—

ALJ I—

ATTY —assessment.

ALJ —encourage you to give work restrictions.

ATTY I have no further questions

ALJ All right.

(R. 623–33.)

## IV. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "take into account whatever in the record fairly detracts from [the] weight" of the

10

Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## V. ANALYSIS

Plaintiff's sole contention of error is that the ALJ denied her due process when the ALJ "stymied" her hearing attorney's attempt to question the vocational expert. (Pl.'s Statement of Errors 2–9, ECF No. 14.)

"The ALJ determines the subject and scope of testimony from a claimant and any witness(es), as well as how and when the person testifies at the hearing." HALLEX I–2–6–60(A).[2] Courts in this circuit have interpreted HALLEX I–2–6–60 to give the ALJ authority to determine the method of witness testimony. *See, e.g.*, *Hickey v. Berryhill*, No. 2:18-0071, 2019 WL 5872482, at *9–10 (M.D. Tenn. July 23, 2019), *report and recommendation adopted sub nom. Hickey v. Soc. Sec. Admin.*, No. 2:18-CV-00071, 2019 WL 5872478 (M.D. Tenn. Sept. 12,

---

[2] The Hearings, Appeals, and Litigation Law Manual ("HALLEX") of the Social Security Administration provides "guiding principles, procedural guidance and information" to ALJs and other staff members. *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 397 (6th Cir. 2008). The HALLEX is not binding on the courts, but the United States Court of Appeals for the Sixth Circuit has found it persuasive. *Id.* at 397.

2019) (concluding that the ALJ's questions about the claimant's spouse's income was allowable after noting that the court was "[u]nable to find any authority that clarifies" HALLEX I–2–6–60); *see also Tindall v. Berryhill*, No. 17-2204-TMP, 2019 WL 1261127, at *3 (W.D. Tenn. Mar. 19, 2019) (citing HALLEX I–2–6–60) ("[T]he ALJ determines the subject and scope of the claimant's testimony, and how and when the claimant will testify at the hearing."). It would be "inappropriate to reverse and remand" where the ALJ acted in compliance with HALLEX I–2–6–60. *Tindall*, 2019 WL 1261127, at *3. Although the "claimant and the representative have the right to question the VE fully on any pertinent matter within the VE's area of expertise," the "ALJ will determine when they may exercise this right and whether questions asked or answers given are appropriate." HALLEX I–2–6–74(C). This is reflective of "the regulations' general rule governing ALJ actions at hearings, which states that '[t]he administrative law judge may decide when the evidence will be presented and when the issues will be discussed.'" *Byers v. Saul, Comm'r of Soc. Sec.*, No. 1:19-CV-2814, 2020 WL 7364233, at *8 (N.D. Ohio Nov. 24, 2020), *report and recommendation adopted sub nom. Elena M. Byers, Plaintiff, v. Comm'r of Soc. Sec., Defendant.,* No. 1:19 CV 2814, 2020 WL 7352663 (N.D. Ohio Dec. 14, 2020) (quoting 20 C.F.R. § 404.944).

Even assuming that it would violate due process for the ALJ to prevent Mr. Morgan from cross-examining the VE, that is not what happened at the hearing. When questioning the VE about Dr. Grodner's report, Mr. Morgan repeatedly asked the VE to consider Dr. Grodner's opinion, which was not worded in terms of work restrictions. (R. 623–33.) The ALJ told Mr. Morgan to ask the VE questions with DOT work restrictions, and to later make an argument to the ALJ that Dr. Grodner's report reflected those restrictions. (*Id.*) Mr. Morgan refused to do so, at one point simply saying, "I don't want to." (*Id.* at 629.) At the end of the examination, Mr.

12

Morgan insisted that he had "no further questions," while the ALJ encouraged him to give the VE work restrictions. (*Id.* at 632–33.)

The ALJ had the discretion to determine "the subject and scope of testimony from [the VE]." HALLEX I–2–6–60(A). Mr. Morgan failed to follow the ALJ's instructions, and his failure does not amount to a due process violation. *See Perschka v. Comm'r of Soc. Sec.*, 411 F. App'x 781, 788 (6th Cir. 2010) (finding no due process violation arising from attorney's failure to respond to the VE's interrogatory responses); *Coffin v. Sullivan*, 895 F.2d 1206, 1212 (8th Cir. 1990) (holding that there is no due process violation where Social Security Disability hearing attorney "remains silent when the opportunity to request cross-examination [of the VE] arises"); *see also Krukemyer v. Forcum,* 475 F. App'x 563, 566 (6th Cir. 2012) ("A due process claim lies only against a governmental defendant. It is well-settled that a lawyer representing a private client is not a state actor.").

Further, even if the ALJ had violated the relevant provisions of HALLEX, this would not necessarily result in a due process violation. "It is an elemental principle of administrative law that agencies are bound to follow their own regulations." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004). Generally, however, federal courts review decisions of administrative agencies for harmless error. *Rabbers*, 582 F.3d, 654–55. Accordingly, "an agency's violation of its procedural rules will not result in reversible error absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses." *Connor v. United States Civil Serv. Comm'n,* 721 F.2d 1054, 1056 (6th Cir. 1983). In particular, "the mere failure to follow specific procedures in the HALLEX manual itself not grounds for reversal absent a convincing showing of prejudice to the plaintiff." *Sito v. Comm'r of Soc. Sec.*, 229 F. Supp. 3d 633, 644 n.90 (N.D. Ohio 2017). Here, Plaintiff has

13

not asserted that the ALJ's evaluation of Dr. Grodner's opinion was not supported by substantial evidence, nor even that the decision to deny benefits was ultimately incorrect; she merely argues that she was denied an opportunity to fully cross-examine the VE. Even if the undersigned agreed that she had been denied that opportunity, remand would not be required in the absence of any prejudice flowing from the denial. Plaintiff has alleged no prejudice, and the undersigned can discern none.

## VI. DISPOSITION

From a review of the record as a whole, the undersigned concludes that the ALJ did not violate Plaintiff's due process rights. For the foregoing reasons, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of

the District Court adopting the Report and Recommendation. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE